## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| STEPHEN M. VANCE, *in his capacity* *as Trustee of the Stephen M. Vance* *Revocable Trust dated October 9, 2017* *derivatively on behalf of* Broce Manufacturing Co., Inc., | ) ) ) ) ) ) |  |
| **Plaintiff,** | ) ) |  |
| v. | ) ) | Case No.  19-1136-EFM-GEB |
| ALAN B. VANCE, TERI V. HUBBELING, MICHAEL F. HUBBELING, JULIE B. VANCE, WALDON EQUIPMENT, LLC, and BROCE MANUFACTURING CO. INC., *Nominal Defendant*, | ) ) ) ) ) ) ) |  |
| **Defendants.** | ) ) ) |  |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Disqualify Counsel (**ECF No. 48**).  After careful review of the briefings and attached exhibits, the Court **GRANTS in part and DENIES in part** Plaintiff's Motion.  As explained below, the Court grants Plaintiff's request to disqualify the law firms of Foulston Siefkin LLP and Lewis Brisbois Bisgaard & Smith LLP from representing Broce Manufacturing Co, Inc. in this derivative shareholder action, but denies Plaintiff's request for the Court to appoint new counsel. Broce Manufacturing Co., Inc., for the reasons stated herein, will be allowed to select its own—albeit independent—counsel.

## I.      Background[1]

### A.      Plaintiff's Original Complaint

Plaintiff Stephen M. Vance, a shareholder of Broce Manufacturing Co., Inc. ("Broce"), filed this Verified Shareholder Derivative Complaint on May 22, 2019. He included Broce as a nominal defendant for the purposes of the derivative claims asserted in the Complaint. He files this lawsuit to enforce rights he alleges Broce has failed to enforce against the individual Defendants, who, as explained in the paragraph below, comprise the directors and officers of Broce.

A review of the relationships between the parties is helpful to understanding the issues. Defendant Alan Vance is Plaintiff's brother, and an officer, director and shareholder of Broce. As an officer, he serves as Broce's President and Chief Executive Officer. Defendant Julie Vance is Alan's wife. She is a shareholder and director of Broce, but not an officer. Defendant Teri Hubbeling is Plaintiff's sister. She is a shareholder, officer, and a director of Broce. As an officer, she serves as Broce's Secretary and Treasurer. Defendant Michael Hubbeling is Teri's husband, and is a shareholder and director of Broce, but not an officer. Although Plaintiff is a shareholder of Broce, as stated above, he is not a director or an officer. At the time of the filing of the initial Complaint,

---

[1] Unless otherwise indicated, the information recited in this section is taken from the pleadings (Complaint, ECF No. 1; Amended Complaint, ECF No. 38; Answers, ECF Nos. 14, 15; Answers to Amended Complaint, ECF Nos. 45, 51), and from the parties' briefs regarding Plaintiffs' Motion to Disqualify Counsel (ECF Nos. 48, 60, 64, 69, 71, 76, 81). This background information should not be construed as judicial findings or factual determinations.

Defendant Waldon Equipment, LLC was wholly-owned and controlled by Defendant Alan Vance ("Alan").

Broce was established in 1963 by the Vance siblings' grandfather. Since its inception, Broce has produced self-propelled pavement sweepers for use in the road construction and paving industries and in other industrial applications. Its products are marketed by a network of dealers around the United States and in several foreign countries as "the Broce Broom."

In the Complaint, Plaintiff allege multiple claims: 1) the individual Defendants breached their duties of loyalty and care owed to Broce as directors of the company (hereinafter referred to as the "Defendant Directors"); 2) unjust enrichment; 3) corporate waste and conspiracy; 4) aiding and abetting; and 5) oppressive concerted action against the Defendant Directors. A majority of Plaintiff's allegations stem from Alan's 2012 purchase of Waldon, which Plaintiff describes as a struggling Oklahoma heavy equipment manufacturer. The Complaint alleges the Defendant Directors breached their fiduciary duties of loyalty and care through "acts and omissions [that] have systematically shifted and bled corporate opportunities, intellectual property, good will and other value out of Broce Manufacturing to Alan's company, Waldon Equipment, for inadequate consideration or no consideration."[2] Below is a condensed summary of the allegations set forth in the Complaint as relevant to the instant Motion.

---

[2] Compl., ECF No. 1, ¶ 13.

According to Plaintiff, after Alan purchased Waldon in 2012, he began trading on Broce's name and good standing by falsely representing to the market that Waldon was associated or in a partnership with Broce. Plaintiff states due to Broce's favorable reputation in the marketplace due to its 50 years of experience, these false statements and misrepresentations boosted Waldon's reputation and value at the expense of Broce, which in turn benefitted Alan without any compensation flowing back to Broce.

In 2014, Plaintiff alleges Alan caused Broce and Waldon to enter into a confidentiality agreement, wherein Waldon gained access to Broce's intellectual property for no consideration and without allowing Broce reciprocal access to any of Waldon's own trade secrets or intellectual property. Plaintiff claims in 2015, with no governing written agreement, Alan shifted the manufacturing of Broce's three-wheeled sweeper, the BB250, from Broce's facility to Waldon's facility.

Plaintiff charges this allowed Alan to enable Waldon to access Broce's trade secrets and designs such that Waldon reversed-engineered the BB250 so as to create a lower-cost and competing three-wheeled road broom, the BW260. According to Plaintiff, this caused Waldon to breach its confidentiality agreement with Broce, but no action was ever taken by Broce to enforce its rights under the agreement. Plaintiff alleges Alan then caused Broce to buy the BW260s manufactured by Waldon, and then re-sell them through Broce's established network of dealers. Plaintiff alleges Waldon has never incurred the cost of establishing and maintaining a dealer network, and never paid a dealer commission for selling a BW260 to a customer. These burdens, along with others, remained with Broce, causing Broce to make little to no profit on the sales of the BW260.

Plaintiff maintains only later in September 2018, and at his own insistence, did Broce and Waldon enter into a written agreement.  Plaintiff alleges that when Alan demanded Waldon be paid $500,000 before it would sign the agreement, the other Directors acquiesced to his demand, and eventually paid Waldon $460,000 for alleged "design" and other "rights" associated with the BW260.

Plaintiff contends he has attempted on multiple occasions to persuade the Directors to take action to remedy the above matters, including making 13 motions at a March 26, 2019 shareholders meeting, but was voted against by the Defendant Directors regarding all motions but one.  Thus, Plaintiff filed this Complaint a few months later.

### B.    Activity Between Filing of the Complaint and December 2019 Mediation

On June 6, 2019, Jay Fowler of the law firm of Foulston Siefkin LLP ("Foulston") entered his appearance on behalf of the Defendant Directors and Broce (collectively referred to herein as the "Broce Defendants").[3]  On July 15, 2019, Alan Rupe and Jeremy Schrag of Lewis Brisbois Bisgaard & Smith, LLP ("Lewis Brisbois") and Mr. Fowler answered the Complaint on behalf of the Broce Defendants by generally denying any wrongdoing.[4]  The Court held a scheduling conference on October 7, 2019 wherein the parties agreed to complete mediation by December 20, 2019.[5]  The parties also agreed to exchange the documents listed in their Fed. R. Civ. P. 26(a)(1) initial disclosures by October 16, 2019 and to exchange amended initial disclosures by October 25, 2019.[6]  The

---

[3] ECF No. 5.
[4] ECF No. 15.
[5] ECF No. 25
[6] *Id.*

parties mediated on December 17, 2019, but were unable to reach a settlement.[7] The docket does not show any formal discovery requests or depositions being completed between the time of the scheduling conference and mediation.

### C.      Broce Buys Waldon in December of 2019

On December 5, 2019, in a supplemental initial disclosure, Broce produced to Plaintiff the Minutes of a December 3, 2019 Special Meeting of the Board of Directors of Broce Manufacturing.[8]  The minutes show Mr. Fowler and Trent Byquist of Foulston were present as invited guests and counsel for Broce.  During the meeting, the Directors—with Alan and his wife Julie abstaining—voted to purchase Waldon's assets for millions of dollars.[9]

While the parties were engaged in the mediation on December 17, 2019, Broce made another supplemental disclosure, producing the Asset Purchase Agreement ("APA") between Broce, as buyer, and Waldon, Vance Holdings, LLC, Alan, and Julie, as sellers.[10]  Although Plaintiff is unaware of who authored the APA, Mr. Fowler and Mr. Schrag disclosed they had multiple conversations with the Directors related to the APA in late November and December 2019.[11]  In their response brief, the Broce Defendants state, for purposes of preparing the transaction documents, Foulston represented Broce and Alan retained separate counsel for himself and Waldon.[12]

---

[7] ECF No. 29.
[8] ECF No. 60 at 7; ECF No. 60-10; *see also* ECF No. 69 at 5.
[9] ECF No. 60 at 7; ECF No. 60-10.
[10] ECF No. 60 at 7.
[11] ECF No. 60 at 7; ECF No. 60-11 at 5-8.
[12] ECF No. 69 at 18.

Plaintiff claims the Defendant Directors, apparently with the aid of Foulston and Lewis Brisbois, reworked the APA in late December of 2019.[13]  According to Plaintiff, Broce is no longer merely buying assets from Alan, but is also assuming Waldon's liabilities.[14]  At closing, Plaintiff claims Alan will receive a substantial amount of cash, while also unloading a substantial amount in debt onto Broce, making the deal even more lucrative for Alan.[15]

On February 11, 2020, Broce held its annual shareholder meeting.[16]  Attorney William R. Wood II of Foulston "was present as counsel to Teri Vance Hubbeling and Alan Vance" and acted as parliamentarian of the meeting.[17]  During the meeting, Plaintiff moved to have the Waldon transaction investigated, and if necessary, a lawsuit filed against the Defendant Directors for any breach of fiduciary duty, but the remaining shareholders rejected this motion.[18]

### D. Plaintiff Amends the Complaint and Seeks Disqualification of Broce's Counsel

On February 6, 2020, Plaintiff filed an Unopposed Motion for Leave to File First Amended Complaint to add allegations of self-dealing and breach of duty of loyalty related to Broce's purchase of Waldon's assets.[19]  The Court granted Plaintiff's Motion, and Plaintiff filed his First Amended Verified Shareholder Derivative Complaint on February

---

[13] ECF No. 60 at 8.
[14] *Id.*
[15] *Id.*
[16] ECF No. 60-13.
[17] *Id.*
[18] *Id.*
[19] ECF No. 35.

24, 2020.[20]   On March 23, 2020, Broce and the Defendant Directors filed an Answer, denying any wrongdoing.[21]

Plaintiff states he became concerned about the dual representation by Foulston and Lewis Brisbois of the Defendant Directors and Broce, particularly given what Plaintiff views as the monumental event of Broce's purchase of Waldon's assets/liabilities and Foulston's role in the transaction in December of 2019.[22]   Therefore, On February 26, 2020, Plaintiff's counsel sent a letter to Foulston and Lewis Brisbois requesting the law firms withdraw from representing Broce in this case due to a conflict of interest.[23]   Foulston and Lewis Brisbois responded on March 6, 2020 denying any disqualifying conflict of interest and claiming Plaintiff waived his right to seek disqualification.[24]   In response, Plaintiff filed the present Motion to disqualify the law firms from representing Broce, and, as a remedy, asked the Court to select independent counsel for Broce.

The Court addresses each of the following issues in turn: (1) the waiver argument, (2) the issue of disqualification itself, and (3) Plaintiff's request for court-appointed counsel for Defendants.

## II.    Waiver of Right to Bring Disqualification Motion

As a threshold issue, Defendants contend Plaintiff waived his right to address these questions.

---

[20] ECF No. 38.
[21] ECF No. 51.
[22] ECF No. 60 at 8.
[23] ECF No. 60-14.
[24] ECF No. 60-15.

A.      **Parties' Arguments - Waiver**

The Broce Defendants argue Plaintiff waived his right to file the disqualification motion based on unjustified delay, unfair prejudice, and use of the motion as a litigation tactic.  The Broce Defendants contend Plaintiff knew of Foulston's and Lewis Brisbois' dual representation of the Defendant Directors and Broce by at least May of 2019, but failed to file the disqualification motion until ten months later in March 2020.  Thus, the Broce Defendants argue Plaintiff should have been aware of the conflict immediately after the filing of his Complaint in May of 2019 because Plaintiff asked Foulston to accept service on behalf of Broce and the Defendant Directors.[25] According to the Broce Defendants, inviting Foulston to accept service of process, and then arguing Foulston, having done so, is disqualified, is a "gotcha" that is clearly prejudicial and shows Plaintiff's true motivations in the litigation.[26]

The Broce Defendants further argue the work their counsel put into this litigation shows unfair prejudice because new counsel would have to duplicate any such effort.  The Broce Defendants state the parties have exchanged written discovery, including more than 10,000 pages of documents, and participated in mediation, which required Foulston and Lewis Brisbois to thoroughly review the facts and law and draft an extensive mediation submission setting forth the Broce Defendants' position. The Defendants also assert Plaintiff sent his first demand letter on November 2, 2018.  During the following six months leading up to the Complaint, Plaintiff made numerous requests for information from the

---

[25] ECF No. 69 at 23.
[26] *Id.*

Broce Defendants and received detailed responses in return, which included explaining the Broce Defendants' position and conducting pre-complaint discovery. The Broce Defendants insist the Court should consider this in its prejudice analysis because counsel spent significant time during this period learning the facts of the case and developing a strategy.

Plaintiff argues he was not unduly delayed in filing the disqualification motion because he only became aware of the serious nature of the alleged conflict in December of 2019 when the details of the purchase of Waldon, and Foulston's and Lewis Brisbois' involvement in the same, were disclosed to him. In this regard, Plaintiff argues the APA and Amended APA "radically altered the landscape of this dispute" and made "molten for Foulston and Lewis Brisbois the ethical conflict that had been smoldering in the many days before."[27]

Specifically, Plaintiff maintains it was in December 2019 when he learned for the first time Foulston was advising Broce as "counsel for the corporation" in a way that facilitated Alan's alleged self-dealing regarding the Waldon transaction. Plaintiff argues the APA was only disclosed to him at the December 17, 2009 mediation, which was also the day it was executed. Plaintiff asserts in Broce's discovery responses, served on February 21, 2020, Plaintiff learned Foulston and Lewis Brisbois engaged in multiple discussions with the Directors regarding the APA. Five days later, Plaintiff's counsel sent a letter asking the firms to withdraw. Thus, Plaintiff argues he acted promptly after

---

[27] ECF No. 60 at 19.

discovering Foulston and Lewis Brisbois had counseled both Broce and Alan's alleged self-dealing.

Plaintiff further argues even if the Court does find some delay on his part, such delay is not dispositive of the issue.  Plaintiff insists the sum of the case activity between the time Plaintiff filed this action and December 17, 2019, when he received a copy of the APA, was the following: the Broce Defendants answered, and the parties made their initial disclosures, participated in a scheduling conference, and a mediation.  Thus, Plaintiff argues because only minimal case activity had occurred and because this case remains in its early stages (written discovery is on-going and no depositions have occurred), any prejudice to the Broce Defendants is negligible.

Additionally, Plaintiff argues the Broce Defendants' perceived prejudice is lessened because Foulston and Lewis Brisbois will continue to represent the Defendant Directors as this case proceeds.  Also, Plaintiff states the legal work counsel represents they did would have had to been done as counsel for the Defendant Directors, regardless of whether they represented Broce, and there is nothing they will have to redo as counsel for the Defendant Directors only.  Plaintiff asserts the work required at this point is what Foulston and Lewis Brisbois have not done, which is to look at the Waldon transactions objectively, and through the lens of the interest of Broce, and not the interest of Alan or the other Defendant Directors.

**B.      Legal Standard – Waiver**

An unjustified delay in filing a motion to disqualify can be sufficient grounds for denying the request.[28]  Litigants "may not delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of the case has been completed."[29]  Factors a court should consider in determining whether the moving party has waived its right to object to the opposing party's counsel include: (1) the length of the delay in bringing a motion to disqualify, (2) when the movant learned of the conflict, (3) whether the movant was represented by counsel during the delay, (4) why the delay occurred, (5) whether disqualification would result in prejudice to the nonmoving party, and (6) whether the motion was delayed for tactical reasons.[30]

**C.      Discussion – Waiver**

In considering the factors set forth above, the Court does not find Plaintiff's disqualification motion to be unreasonably delayed such that the motion should be denied. The Court finds Plaintiff knew of Foulston and Lewis Brisbois' dual representation since at least July of 2019 when both firms entered an appearance and filed a joint Answer on behalf of Broce and the Defendant Directors.[31]  However, the Court finds Plaintiff did not

---

[28] *Coffeyville Res. Ref. & Mktg. v. Liberty Surplus Ins. Corp.*, 261 F.R.D. 586, 589 (D. Kan. 2009).
[29] *Id.*
[30] *Layne Christensen Co. v. Purolite Co.*, No. 09-2381-JWL-GLR, 2011 WL 1113543, at *17 (D. Kan. Mar. 24, 2011).
[31] ECF Nos. 5 and 15.

became aware this dual representation was potentially disqualifying in nature until December of 2019.

On or around December 5, 2019, as part of a supplementation of initial disclosures, Broce produced to Plaintiff minutes from a December 3, 2019 board of directors meeting where Foulston was present as counsel for Broce.[32]  Those minutes disclose the Defendant Directors (with Alan and Julie abstaining due to their interest in Waldon) voted to purchase Waldon for a substantial amount of money.[33]  During the December 17, 2019 mediation, Broce produced the Asset Purchase Agreement, which was executed that day.[34]  Thus by December 17, 2019, Plaintiff knew Broce was actually going to purchase Waldon and knew the details of such purchase, and knew, or should have known, Foulston was representing Broce in that transaction based on the December 3, 2019 meeting minutes.

The Broce Defendants argue Plaintiff and his counsel were aware of Foulston's involvement in the issues related to the potential purchase of Waldon in February and March of 2019.[35]  Defendants also claim in October 16, 2019, Plaintiff knew of Broce's decision to retain the accounting and business advisory firm, BKD LLP, for valuation services related to a possible transaction with Waldon because it was produced in their initial disclosures.[36]  However, this was when the transaction was only a possibility.

---

[32] ECF No. 60 at 7; ECF No. 60-10; ECF No. 69 at 5 (The Broce Defendants state Plaintiff and his lawyers "were specifically informed of the decision to proceed with the acquisition of Waldon's assets no later than December 5, 2020 and were aware of Foulston's role as counsel for Broce.").
[33] *Id.*
[34] ECF No. 60 at 7; ECF No. 69 at 5 (The Broce Defendants state on "December 10 and December 17, 2019, additional disclosures were made, including a copy of the proposed Asset Purchase Agreement that was shared with [Plaintiff] and his lawyers.").
[35] ECF No. 69 at 5.
[36] *Id.*

Thus, the issue for the Court is whether the period of time between December 17, 2019 and March 20, 2020 (the date of filing of the disqualification motion) amounts to an unreasonable delay.  The Court finds this roughly three-month period is not an unjustified delay.  During the relevant time period, Plaintiff served discovery requests to learn further information about the transaction, moved to amend the Complaint to add allegations regarding the transactions, and sent a letter to Foulston and Lewis Brisbois requesting withdrawal as counsel for Broce before filing the disqualification motion.  The Court considers these reasonable steps to undertake before filing such a serious motion.

Additionally, the Court does not find the case activity occurring within these three months unfairly prejudicial to Broce.  While the docket does show discovery being sent and answered by Broce only,[37] no depositions were taken, and no contested motions filed.[38] And, the discovery period is ongoing, meaning the case is still in its earlier stages.[39]  It also appears the other work completed during this time period was performed by counsel on behalf of Broce and the Defendant Directors, meaning counsel would have had to undertake the work regardless of their representation of Broce.  The same appears to be true regarding counsel's pre-suit and pre-mediation work—according to the Broce

---

[37] ECF Nos. 33 and 38.

[38] *Contra Layne Christensen Co.*, 2011 WL 1113543, at *18 (finding disqualification motion untimely where it was filed after parties had exchanged written discovery, including voluminous document production, conducted a Rule 30(b)(6) deposition, and filed a number of contested motions).

[39] *Contra Coffeyville*, 261 F.R.D. at 591 (finding disqualification motion untimely where motion filed after the parties' motions for summary judgment were fully briefed and discovery was complete).

Defendants' brief, such work was undertaken on behalf of both Broce and the Defendant Directors.[40]

Finally, the Court does not find Plaintiff filed this motion for tactical reasons.  The Broce Defendants argue as much in their brief, but they fail to state what tactical litigation advantage Plaintiff actually gains in this lawsuit by having counsel disqualified from representing Broce.  While new counsel may be engaged for Broce, Foulston and Lewis Brisbois would likely still remain as counsel for the Defendant Directors.  And, Plaintiff asserts his reasoning for the disqualification motion is to have independent counsel look at the Waldon transactions objectively, and through the lens of the interest of Broce, not the interest of the Defendant Directors.  While the Court does not imply Foulston and Lewis Bribois have not undertaken such an independent view of the transactions, it understands Plaintiff's concerns when the same counsel also represents the interests of the Defendant Directors.

This concern is highlighted by the February 11, 2020, Broce annual shareholder meeting minutes.[41]  Foulston "was present as counsel to Teri Vance Hubbeling and Alan Vance."[42]  During the meeting, Plaintiff moved to investigate and, if necessary, have a lawsuit filed regarding the Defendant Directors' alleged breach of  fiduciary duties in relation to Broce's purchase of Waldon, but his motion was rejected by the other

---

[40] ECF No. 69 at 23 (The "Broce Defendants' counsel spent significant time during this period learning the facts of the case and developing a strategy.").
[41] ECF No. 60-13.
[42] *Id.*

shareholders, who are the Defendant Directors.[43]   Thus, the Court does not find Plaintiff's

concern regarding whether any person acted specifically on behalf of the company itself,

and his motivation in filing the disqualification motion, to be misplaced.

## III.   Disqualification Based on Dual Representation of the Broce Defendants

Plaintiff seeks disqualification based upon Foulston's and Lewis Brisbois' dual

representation of Broce and the Defendant Directors.   In general terms, Plaintiff argues

ethical rules and caselaw forbid dual representation of individual directors and the

corporation when directors are accused of self-dealing.   The Broce Defendants argue due

to the close corporation structure of Broce, all interests are already represented by counsel

and are before the Court.   Therefore, separate counsel for Broce would add no value to the

action.

### A.   General Legal Standard Regarding Disqualification of Counsel

The Court reviews disqualification by examining two primary sources.[44]  "First,

attorneys are bound by the local rules of the court in which they appear . . . . Second,

because motions to disqualify counsel in federal proceedings are substantive motions

affecting the rights of the parties, they are decided by applying standards developed under

federal law."[45]

The District of Kansas has adopted the Kansas Rules of Professional Conduct

---

[43] *Id.*

[44] *Greenfield v. Newman Univ., Inc.*, No. 18-2655-DDC-TJJ, 2019 WL 2250143, at *3 (D. Kan. May 24, 2019) (citing *United States v. Stiger*, 413 F.3d 1185, 1195 (10th Cir. 2005)).

[45] *Id.* (citing *Stiger*, 413 F.3d at 1195 (quoting *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1383 (10th Cir. 1994))).

("KRPC") as the "applicable standards of professional conduct" for lawyers appearing in this Court.[46]  The Court has the power to disqualify counsel at its discretion based upon these professional standards of ethics.[47]  Ethical violations, however, do not automatically trigger disqualification.[48]  Disqualification is appropriate only where the offending attorney's conduct threatens to "taint the underlying trial" with a serious ethical violation.[49]

A motion to disqualify must be decided on the unique facts of the case, and the Court must carefully balance the interest in protecting the integrity of the judicial process against the right of a party to have the counsel of its choice.[50]  As a part of this balancing process, the Court considers: (1) the privacy of the attorney-client relationship; (2) the prerogative of each party to choose its own counsel; and (3) the hardships disqualification would impose upon the parties and the entire judicial process.[51]

The burden is on the moving party[52] to "show proof that is more than mere

---

[46] D. Kan. Rule 83.6.1(a).

[47] *Greenfield*, 2019 WL 2250143, at *3 (citing *E.E.O.C. v. Orson H. Gygi Co., Inc.*, 749 F.2d 620, 621 (10th Cir. 1984); *Biocore Med. Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660, 664 (D. Kan. 1998)).

[48] *Layne Christensen Co.*, 2011 WL 1113543, at *5 (citations omitted).

[49] *Id.* (quoting *Chapman Eng'rs, Inc. v. Natural Gas Sales Co., Inc.*, 766 F. Supp. 949, 954 (D. Kan. 1991) (citing *W.T. Grant Co. v. Haines*, 531 F.2d 671 (2d Cir. 1976))).

[50] *Darnell v. Merch.*, No. 17-3063-EFM-TJJ, 2017 WL 2618823, at *2 (D. Kan. June 16, 2017).

[51] *Layne Christensen Co.*, 2011 WL 1113543, at *5.

[52] *LeaseAmerica Corp.*, 19 Kan. App. 2d 740, 750 (1994) (citing *Field v. Freedman*, 527 F. Supp. 935, 941 (D. Kan. 1981)). *See also United States v. Oyer*, No. 08-2002-CM, 2009 WL 1904308, at *1 (D. Kan. July 1, 2009) (discussing KRPC 3.7); *see also Koch v. Koch Indus.*, 798 F. Supp. 1525, 1530–31 (D. Kan. 1992) (citing *F.D.I.C. v. Sierra Resources, Inc.*, 682 F. Supp. 1167, 1170 (D. Colo. 1987); *Field*, 527 F. Supp. at 941).  In *Koch*, the Court explains the different standard applied in *Parker v. Volkswagenwerk Aktiengesellschaft*, 245 Kan. 580, 781 P.2d 1099 (1989).  In *Parker*, that standard was limited to the situation under KRPC 1.10(b) where an attorney becomes associated with a new firm, creating a conflict of interest.  In that circumstance, the burden shifts to the new firm to prove that the lawyer in question did not actually have relevant knowledge. *Koch*, 798 F. Supp. at 1530–31 (citing *Parker*, 245 Kan. at 587; citing Geoffrey C. Hazard, Jr. &

speculation and sustains a reasonable inference of a violation."[53] "The essential issue is whether the alleged misconduct taints the lawsuit."[54]

Due to the importance of the issue, "[a] motion to disqualify counsel deserves serious, conscientious, and conservative treatment."[55]  "The right to counsel of choice is an important one subject to override for compelling reasons. Even so, this right is secondary in importance to preserving the integrity of the judicial process, maintaining the public confidence in the legal system and enforcing the ethical standards of professional conduct."[56]

Additionally, the Court reviews such a motion mindful that it can be used as a part of the litigation strategy or as a technique for harassing the other side.[57]

## B.    KRPC 1.7 – Conflict of Interest:  Current Clients

KRPC 1.7 applies to the instant dispute through KRPC 1.13.  Rule 1.13 governs representation of corporations and organizational clients.  The rule notes while a "lawyer representing an organization may also represent any of its directors," this representation is "subject to the provisions of Rule 1.7" on conflicts of interest.[58] Specifically, the comments to Rule 1.13 speak to shareholder derivative claims.  The comments provide, "[m]ost

---

W. William Hodes, *The Law of Lawyering,* § 1.10:209 (1990)).

[53] *Riley v. PK Mgmt., LLC*, No. 18-2337-KHV-TJJ, 2019 WL 4256367, at *2 (D. Kan. Sept. 9, 2019) (quoting *Biocore Med. Techs., Inc.*, 181 F.R.D. at 664 (quoting *Koch,* 798 F. Supp. at 1530–31)).

[54] *Id*. (quoting *Biocore Med. Techs., Inc.,* 181 F.R.D. at 664) (quoting *Koch,* 798 F. Supp. at 1530–31)).

[55] *Layne Christensen Co.,* 2011 WL 1113543, at *5 (citing *Koch,* 798 F. Supp. at 1530).

[56] *Greenfield*, 2019 WL 2250143, at *3 (quoting *Koch*, 798 F. Supp. at 1530 n.2).

[57] *Id*.

[58] KRPC 1.13(e).

18

derivative actions are a normal incident of an organization's affairs, to be defended by the organization's lawyer like any other suit."[59]  The comments go on to state, "[h]owever, if the claim involves serious charges of wrongdoing by those in control of the organization, a conflict may arise between the lawyer's duty to the organization and the lawyer's relationship with the board.  In those circumstances, Rule 1.7 governs who should represent the directors and the organization."[60]

Rule 1.7, in turn, governs conflicts of interests among current clients.  In particular, Rule 1.7(a)(2) provides that a lawyer shall not represent a client if (1) "the representation of one client will be directly adverse to another client" or (2) "there is a substantial risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."  Comment 8 to Rule 1.7 explains that "a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests." Thus, the issue before the Court is whether Foulston's and Lewis Brisbois' representation of Broce in this matter is materially limited by the firms' representation of the Defendant Directors.[61]

---

[59] KRPC 1.13 cmt. 12.

[60] *Id*.

[61] The Court notes KRPC 1.7(b) allows for dual representation despite a concurrent conflict of interest if each affected client gives informed consent in writing.  Plaintiff argues that in the context of dual representation in derivative shareholder actions, the conflict as to the corporation and the individual directors cannot be waived by those parties. ECF No. 60 at 11, n.9.  The Broce Defendants do not address wavier or consent in the context of KRPC 1.7(b) in their response brief.

### C.      Caselaw Regarding Dual Representation in Derivative Actions

Neither party cited any Kansas state, District of Kansas or Tenth Circuit caselaw governing a conflict of interest analysis in a derivative action such as this.  Because the Court located little,[62] the Court is inclined to consider authority from other jurisdictions.

Among the cases surveyed, the prevailing view is—except in patently frivolous cases—allegations of directors' fraud, intentional misconduct or self-dealing require separate counsel for the corporation and individual defendant directors.[63]  "Dual representation is improper, because the interests of the corporate entity and the individual [defendants] are potentially adverse in a meritorious suit."[64] "The corporation is a nominal

---

[62] The Court notes *Quality Developers, Inc. v. Thorman*, 29 Kan. App. 2d 702, 31 P.3d 296 (2001) involves a motion to disqualify a law firm from representing a shareholder and president in a derivative action for taking inconsistent positions on ownership of the company but does not find the analysis used in this case helpful to the present situation.  Additionally, in *Field v. Freedman*, 527 F. Supp. 935 (D. Kan. 1981), the court considered whether disqualification of the law firm representing all defendants was appropriate in an action for fraud brought by a minority stockholder against a corporation and its majority shareholders.  However, the case involved a defunct corporation, which the court found had no adverse interest to the other defendants. Therefore, the Court finds the reasoning inapplicable here.

[63] *See, e.g., Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1317 (3d Cir. 1993); *Musheno v. Gensemer*, 897 F. Supp. 833, 837 (M.D. Pa. 1995); *see also Natomas Gardens Inv. Grp. LLC v. Sinadinos*, No. CIV S-08-2308 FCD/KJ, 2009 WL 3055213, at *6 (E.D. Cal. Sept. 14, 2009), *order clarified*, No. CIV S-08-2308 FCDKJM, 2009 WL 4282054 (E.D. Cal. Nov. 25, 2009) ("In the specific context of shareholder derivative actions, courts have consistently recognized that the 'law clearly forbids dual representation of a corporation and directors in a shareholder derivative suit, at least where, as here, the directors are alleged to have committed fraud.'"); *Baytree Capital Assocs., LLC v. Quan*, No. CV082822CASAJWX, 2008 WL 3891226, at *8 (C.D. Cal. Aug. 18, 2008) ("In keeping with this view, courts around the country have either strongly discouraged or prohibited dual representation of the corporation and individual defendants to a derivative suit because a potential conflict of interests exists between counsel's duties to the corporation and counsel's relationship with the individual defendants."); *David S. Rogers, as Tr. For Bankr. Estate of David G. Ackley v. Virgin Land, Inc., Ackley Commc'ns, Enterprises, Inc., John N. Ackley, Carole*, No. 1996-13M, 1996 WL 493174, at *2 (D.V.I. May 13, 1996).

[64] *Ackley*, 1996 WL 493174, at *2.

defendant, but any recovery by the shareholder inures to the corporation's benefit."[65]  If the same counsel represents both the corporation and the director defendants, "the interests of the corporation are likely to receive insufficient protection [because] an increased recovery for the corporation is wholly incompatible with the goal of limiting the defendants' liability."[66]

Additionally, given an attorney's duty of loyalty to each of his or her clients, the rule of disqualification in dual representation cases appears rather automatic.[67]  "There is a strong possibility that a 'lingering allegiance' toward the [defendant directors] will color or otherwise bias" the same counsel's legal advice to the corporation.[68]  Dual representation can also encompass the possibility that confidences obtained from one client during the course of representation might be used to the detriment of the other.[69]  Additionally, where the corporation takes an active role in the litigation, multiple courts have opined that independent counsel must be obtained.[70]

### D.    Parties' Arguments - Disqualification

Plaintiff argues Broce's recent purchase of Waldon and Foulston's and Lewis Brisbois' involvement in the same comprises allegations of self-dealing serious enough to invoke the above rule that Foulston and Lewis Brisbois should be disqualified from representing Broce in this action.   Plaintiff asserts Foulston's and Lewis Brisbois'

---

[65] *Id.*
[66] *In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1188 (N.D. Cal. 1993) (citation omitted).
[67] *Baytree Capital Assocs., LLC*, 2008 WL 3891226, at *8.
[68] *Stepak v. Addison*, 20 F.3d 398, 405 (11th Cir. 1994).
[69] *Musheno*, 897 F. Supp. at 836.
[70] *Baytree Capital Assocs., LLC*, 2008 WL 3891226, at *8 (collecting cases).

participation in the transaction moves them past the routine but problematic situation where they would have to conduct a reasonable and impartial investigation into Plaintiff's claims of the Defendant Directors' alleged wrongdoing while also zealously defending the Directors.   Plaintiff insists Foulston and Lewis Brisbois must now scrutinize their own conduct in advocating for, structuring, and facilitating Broce's purchase of Waldon's assets/liabilities at the behest of their other clients, the Defendant Directors, and Alan in particular.   Thus, Plaintiff contends Foulston and Lewis Brisbois cannot assess neutrally whether Broce should bring a potential claim against Alan and/or the other Directors, much less assess their own participation.

Plaintiff further argues Foulston and Lewis Brisbois have strategically "weaponized" Broce against Plaintiff and transformed Broce into an active participant in this litigation. As an example, Plaintiff points out they have served written discovery to Plaintiff under Broce's name, instead of serving it on behalf of the Defendant Directors only.   Therefore, Plaintiff argues the above per se disqualification rule should be invoked.

While not disagreeing with the above-cited rule that except in patently frivolous cases, allegations of directors' fraud, intentional misconduct or self-dealing require separate counsel for the corporation and individual defendant directors, the Broce Defendants argue they are exempt from this rule due to Broce's structure as a close corporation.[71]   The Broce Defendants claim the close corporation nature of Broce makes additional counsel for Broce unnecessary because all interests are already accounted for in

---

[71] ECF No. 69 at 28.

this litigation.  Broce contends the constituents of an organization are its officers, directors, employees and shareholders.  At Broce, the only authorized constituents are Alan, Teri, Michael, Julie, and Plaintiff.  Thus, Broce argues it has no interest in this litigation beyond the interests asserted by Alan, Teri, Michael, Julie, or Plaintiff.  The Broce Defendants reason because all of those interests are already represented by counsel and before the Court, another lawyer hired by Broce would add no value to the action or to Broce, but only force Broce to spend more money all as part of an effort by Plaintiff to gain a tactical advantage.

To highlight this fact, the Broce Defendants maintain if the Court disqualified counsel, a new lawyer would make an assessment and present it to Broce's Board, which is made up by the Defendant Directors.  The assessment would be either the Defendant Directors did or did not breach their fiduciary duties.  But, the Broce Defendants argue this is binary because the Defendant Directors and Broce have already taken the position that no fiduciary duties have been breached, so no additional interest could be represented in that scenario.  Likewise, they argue, Plaintiff has already taken the position that fiduciary duties have been breached, so no additional interest would be represented in either scenario.

Furthermore, the Broce Defendants argue as a practical matter, Broce is always going to take the position the Defendant Directors did not breach their fiduciary duties because the Defendant Directors constitute the majority of Broce's authorized constituents and control Broce's position in this matter.  The Broce Defendants cite comment 4 to KRPC 1.13, which states when "constituents of the organization make decisions for it, the decisions ordinarily must be accepted by the lawyer even if their utility or prudence is

doubtful.  Decisions concerning policy and operations, including ones entailing serious risk, are not as such in the lawyer's province."  In other words, the Broce Defendants argue even an independent recommendation itself serves no purpose because the newly-appointed lawyer will always be directed to take the position that the Defendant Directors did not breach their fiduciary duties and any lawyer is obligated to follow this direction.

Finally, the Broce Defendants argue this action is more akin to a direct action rather than a derivative action, making Broce a truly nominal party with no need for its own counsel.[72]  And, they argue Plaintiff's allegations of self-dealing are frivolous such that the rule requiring separate counsel does not factor into the present situation.

### E.    Discussion - Disqualification

#### 1.    Duty of Loyalty

While the Court understands the Broce Defendants' arguments and is sympathetic to the fact that appointment of new counsel would require Broce to incur additional attorney fees and impinges on Broce's right to select counsel of its choice, the Court finds the factual situation dictates independent counsel be retained for Broce.  At the outset, Plaintiff's claims surrounding Broce's multi-million-dollar purchase of Waldon involve serious allegations of self-dealing requiring separate counsel for Broce and the Defendant Directors.  In deciding a motion to disqualify the Court, notwithstanding the important right to counsel of one's choosing, must "preserve[] the integrity of the judicial process,

---

[72] ECF No. 29 at 24-25.

maintain[] the public confidence in the legal system and enforc[e] the ethical standards of professional conduct."[73]

It is not clear to the Court how Foulston and Lewis Brisbois can uphold their duties of loyalty to both Broce and the Defendant Directors going forward.[74] "To properly distinguish between meritorious and frivolous shareholder allegations corporate counsel must be able to exercise independent professional judgment, free of any bias in favor of his individual clients."[75]  Likewise, "only after a reasonable and *impartial* investigation can a board of directors determine, consistent with its fiduciary duties, where the corporation's interests lie."[76]

The Broce Defendants essentially argue these principles of law are irrelevant here because regardless of what any independent lawyer recommends, the Defendant Directors will always vote in favor of no breach of fiduciary duties because those breaches have been alleged against the Defendant Directors.  They disguise their argument as being true only in the context of a close corporation, but the Court discerns no difference.  The Broce Defendants repeatedly argue no additional interest outside of those already present are necessary for this action.  However, the Broce Defendants never discuss the potential conflicting interest between Broce and the Defendant Directors.  If an independent lawyer

---

[73] *Greenfield*, 2019 WL 2250143, at *3 (quoting *Koch*, 798 F. Supp. at 1530 n.2).

[74] *See* KRPC 1.7 cmt. 1 ("Loyalty and independent judgment are essential elements in the lawyer's relationship to a client.").

[75] *Stepak v. Addison*, 20 F.3d 398, 404-05 (11th Cir. 1994). *See also* KRPC 2.1, requiring "In representing a client, a lawyer shall exercise *independent professional judgment* and render candid advice."

[76] *See Stepak*, 20 F.3d at 405 (emphasis added).

recommends a finding of wrongdoing on the part of the Defendant Directors regarding the Waldon transaction, the Defendant Directors have an obligation to Broce to seriously consider that recommendation, and proceed accordingly in this action.[77]

Additionally, the Court finds it would be extremely difficult, despite their best intentions and good faith efforts, for Foulston and Lewis Brisbois to undertake such an independent investigation given their involvement in the Waldon transaction on behalf of both Broce and the Defendant Directors.  For example, the December 3, 2019 Board of Director meeting minutes show Foulston present as counsel for Broce when the Waldon transaction was approved.   In their brief, the Broce Defendants state for purposes of preparing the transaction documents, Foulston represented Broce. And, although Alan and Waldon had separate counsel regarding the transaction documents, the discovery responses show that Foulston and Lewis Brisbois advised all of the Defendant Directors about the APA in late November and December of 2019.  Additionally, the February 11, 2020, Broce annual shareholder meeting minutes show Foulston being "present as counsel to Teri Vance Hubbeling and Alan Vance."[78]  During the meeting, Plaintiff moved to investigate and, if necessary, have a lawsuit filed regarding the Defendant Directors' alleged breach

---

[77] *See, e.g., id.* ("We take it as axiomatic that a board would not be acting consistently with its fiduciary duties were it to reject a shareholder demand based on an investigation and presentation by the alleged wrongdoers. . . .  Likewise, when a board chooses to entrust its investigation to a law firm . . . the directors must ensure that counsel is capable of independently evaluating the corporation's interests.  Selection of a law firm that has actually represented the alleged wrongdoers in proceedings related to the very subject matter that the law firm is now asked to neutrally investigate reaches, in our opinion, the level of gross negligence and is incompatible with a board's fiduciary duty to inform itself 'of all material information reasonably available' prior to making a business decision.") (internal citations omitted).
[78] ECF No. 60-13.

of fiduciary duties in relation to Broce's purchase of Waldon, but his motion was rejected by the other shareholders, who are the Defendant Directors.

The Court finds these interactions show Foulston and Lewis Brisbois are too entangled in the Waldon transaction to give independent legal advice about any wrongdoing associated with that transaction. And, the Court finds it would be even more difficult for counsel to zealously defend the Defendant Directors while protecting Broce's interest in the event wrongdoing is uncovered.

The Broce Defendants also argue this action is more akin to a direct action other than a derivative action, making Broce a truly nominal party with no need for its own counsel.[79] But Plaintiff, as is his right, has brought this case as a derivative action, not a direct action. And, the Broce Defendants have made Broce an active participant in this lawsuit. They issued and answered discovery in the name of Broce only.[80] Additionally, and most importantly, Broce participated in a multi-million-dollar purchase of Waldon in the midst of this lawsuit, which already involved allegations of wrongdoing in the Defendant Directors handling of Broce's previous interactions with Waldon.[81]

Based on the above, the Court cannot find that allowing Foulston and Lewis Brisbois to continue to represent Broce preserves the integrity of the judicial process, maintains the public confidence in the legal system and enforces the ethical standards of

---

[79] ECF No. 29 at 24-25.

[80] ECF Nos. 33 and 39.

[81] *Baytree Capital Assocs., LLC*, 2008 WL 3891226, at *8 ("Especially where the corporation takes an active role in the litigation, courts have stated that independent counsel must be obtained.").

professional conduct.  It appears to the Court that the Defendant Directors owe a duty to Broce to have any serious allegations of wrongdoing independently investigated.

### 2.        Patently Frivolous Allegations

The Broce Defendants argue separate counsel is not needed for a corporation and individual directors when a plaintiff's claims are frivolous. The Broce Defendants insist this is the case here regarding Plaintiff's claims, and thus assert the disqualification motion should be denied.[82]   However, as Plaintiff correctly states, the caselaw states separate counsel is not needed when the claims are patently frivolous, or in other words, totally lacking in merit.[83]   This is so because when the action is "patently frivolous, there is no conflict of interest because both the individual defendants and the corporation would have the same interest in seeking dismissal of the suit."[84]

After a review of the detailed factual statements, exhibits, and affidavits submitted by both parties, the Court finds Plaintiff's allegations are not obviously frivolous.  If they were, the Court is certain the Broce Defendants would have filed a motion to dismiss in lieu of answering the Complaint and Amended Complaint.   Additionally, because discovery is ongoing, it is too early in this action for any reliable assessments of the merits.

---

[82] ECF No. 69 at pp. 28-31.
[83] *See, e.g., Musheno*, 897 F. Supp. at 837; *Ackley*, 1996 WL 493174, at *3.
[84] *Ackley,* 1996 WL 493174, at *3 (citing *Bell Atlantic*, 2 F.3d at 217 and *Schwartz v. Guterman*, 441 N.Y.S.2d 597, 598 (1981)).

### F.      Conclusion - Disqualification

Given the prevailing view that—except in patently frivolous cases—allegations of directors' fraud, intentional misconduct or self-dealing require separate counsel for the corporation and individual defendant directors, the Court must disqualify Foulston and Lewis Brisbois from representing Broce in this matter.  As stated above, the Court recognizes the importance of choice of counsel, but the Defendant Directors will keep their chosen counsel going forward.  And, while Broce will have to expend time and resources getting new counsel informed, this case is still in the early stages of discovery such that the Court can discern no real prejudice to the parties or the judicial process.  Finally, the Court does not find Plaintiff's motivation in filing the disqualification motion to be misplaced as Plaintiff is asking for disinterested counsel to conduct an independent review of the Waldon transaction on behalf of Broce.

## IV.      Appointment of New Counsel for Broce

Plaintiff asks the Court to appoint counsel for Broce instead of allowing Broce to select its own counsel because the decision will be made by the Defendant Directors.  Plaintiff argues the Defendant Directors should not be allowed to make this decision because they are the alleged wrongdoers, and any selected counsel would remain subject to their control.

The Broce Defendants argue Broce's Board, which is compromised of the Defendant Directors, should be allowed to choose its own counsel.  They state that while any counsel selected will report to the Board, such counsel will also be subject to the Kansas Rules of Professional Conduct.

The Court finds no direct authority, and Plaintiff cites none, giving it the power to unilaterally select counsel for an opposing party. Although Congress has established a procedure for the appointment of independent counsel for the investigation of criminal violations, such a procedure is clearly inapplicable in this circumstance.[85] Perhaps the Court could rely upon its "inherent power" to appoint counsel, but another Court in this District has declined to do so.[86]  In an Iowa case specifically considering appointment of independent counsel for a corporation, the dissent collects various authorities and illuminates the difficulties in the selection of counsel for a party, such as:  "Who pays the court appointed counsel in this civil litigation? Must [the] corporation be denied choice of counsel *and* be required to pay expenses and fees? They may well run into several thousand dollars. Should plaintiffs be required to post a cost bond to secure payment?"[87] And, imposing choice of counsel on the corporation "may be constitutionally infirm, raising questions of deprivation of property without due process of law and infringement upon right to choose counsel."[88]

Although hesitant to do so, the Court is compelled to agree with the Broce Defendants.  Appointment of counsel ignores the safeguards of the adversary process.[89]

---

[85] *Frydman v. Dep't of Justice*, No. 78-4257-R, 1990 WL 170992, at *1 (D. Kan. Oct. 3, 1990), *on reconsideration,* 760 F. Supp. 193 (D. Kan. 1991) (citing 28 U.S.C. § 591 *et seq.*)

[86] *Id*.

[87] *Rowen v. LeMars Mut. Ins. Co. of Iowa*, 230 N.W.2d 905, 918 (Iowa 1975) (Moore, C.J., dissenting) (collecting cases)

[88] *Id.* (Moore, C.J., dissenting) ("The majority order for trial court appointment of counsel for each of the two corporations ignores the safeguards of the adversary process. It may be constitutionally infirm, raising questions of deprivation of property without due process of law and infringement upon right to choose counsel.").

[89] *Id*. (Moore, C.J., dissenting).

Any new counsel selected will be obligated to abide by the ethical rules and their duty of loyalty owed to the Broce corporation.  This new counsel will not be representing the Defendant Directors, and as such owes no loyalty to them as defendants in this action.

However, caselaw makes clear that counsel for the corporation in a derivative action must be "independent counsel" who has had no previous connection with the corporation or its individual directors or shareholders.[90]  Thus, the Court directs Broce to retain <u>wholly independent counsel</u> who has no prior ties to either the company <u>or</u> any party to this case to advise it as to the position it should take in this controversy.

In an effort to impress upon Defendants the seriousness of this mandate, and to assure the independence of any selected counsel, the Court will require newly-retained counsel for Broce to certify his/her compliance with this Order.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Disqualify Counsel (**ECF No. 48**) is **GRANTED in part** and **DENIED in part**.  Foulston and Lewis Brisbois shall be disqualified from representing Broce.  However, the Court declines Plaintiff's request to select Broce's new counsel.  Rather, Broce shall be allowed to select its own independent counsel provided such counsel has no prior ties to the company or any party to this case.

**IT IS FURTHER ORDERED** that newly-appointed counsel for Defendant Broce shall certify, in a document filed with this Court, that he or she understands the directives

---

[90] *Natomas Gardens Inv. Grp. LLC*, 2009 WL 3055213, at *9, *order clarified*, 2009 WL 4282054 (collecting cases).

of this Order, has no prior ties to either Broce or any party to this case, and will look solely

to the interests of Broce.  Such certification must be filed no later than **October 30, 2020**,

**or within 30 days** of the retention of said counsel, whichever occurs first.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 15th day of September, 2020.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge