IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| STEPHEN M. VANCE, in his capacity as Trustee of the Stephen M. Vance Revocable Trust dated October 9, 2017, derivatively on behalf of Broce Manufacturing Co., Inc., | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| ALAN B. VANCE, TERI V. HUBBELING, MICHAEL F. HUBBELING, JULIE B. VANCE AND WALDON EQUIPMENT, LLC, | ) ) ) | Case No. 6:19-cv-1136-EFM-GEB |
| Defendants, | ) ) | |
| and | ) ) | |
| BROCE MANUFACTURING CO. INC., | ) ) | |
| Nominal Defendant. | ) ) ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Stephen M. Vance's Motion to Compel Production of Documents Subject to the Fiduciary Exception to Privilege (**ECF No. 109**) and Motion to Compel Production of Native Files (**ECF No. 111**). After careful review of the briefings and attached exhibits, reviewing certain documents *in camera*, and hearing the oral arguments of counsel, the Court **GRANTS in part and DENIES in part** Plaintiff's Motion to Compel Production of Documents Subject to the Fiduciary Exception to Privilege and **GRANTS in part and DENIES in part** Plaintiff's Motion to Compel Production of Native Files.

1

## I.    Background[1]

Plaintiff Stephen M. Vance, a shareholder of Broce Manufacturing Co., Inc. ("Broce"), filed his Verified Shareholder Derivative Complaint on May 22, 2019.  Broce was established in 1963 by Vance's grandfather. Since its inception, Broce has produced self-propelled pavement sweepers for use in road construction and other industries. Its products are marketed around the United States and in several foreign countries as "the Broce Broom." Plaintiff included Broce as a nominal defendant for the purposes of the derivative claims asserted in the Complaint. He filed this lawsuit to enforce rights he alleges Broce has failed to enforce against the Individual Defendants.

A majority of Plaintiff's allegations stem from the 2012 purchase of Waldon Equipment, LLC ("Waldon") by Defendant Alan Vance ("Alan"), also a Broce officer, director, and shareholder. Plaintiff describes Waldon as a struggling Oklahoma heavy equipment manufacturer. When the initial Complaint was filed, Waldon was wholly owned and controlled by Alan. But during a December 3, 2019 Special Meeting of the Broce Board of Directors, the directors voted to purchase Waldon's assets for millions of dollars. On February 6, 2020, Plaintiff filed an Unopposed Motion for Leave to File First Amended Complaint to add allegations of self-dealing and breach of duty of loyalty related to Broce's

---

[1] Unless otherwise indicated, the information recited in this section is taken from the pleadings (Complaint, ECF No. 1; Unopposed Motion to Amend Complaint, ECF No. 35; Amended Complaint, ECF No. 38; Answers, ECF Nos. 14, 15; Answers to Amended Complaint, ECF Nos. 45, 51; Memorandum in Support, Plaintiff's Motion to Disqualify Counsel, ECF No. 60; and Response, Motion to Disqualify Counsel, ECF No. 69). This is background information should not be construed as judicial findings or factual determinations.

purchase of Waldon's assets. The Court granted Plaintiff's Motion, and Plaintiff filed his First Amended Verified Shareholder Derivative Complaint on February 24, 2020. On March 23, 2020, Broce and the Defendant Directors filed an Answer, denying any wrongdoing.

## II.    Compliance with D. Kan. Rule 37.2

Pursuant to D. Kan. Rule 37.2, this Court "will not entertain any motion to resolve a discovery dispute" unless the moving party has "conferred or has made reasonable effort to confer with opposing counsel" before filing a motion. Given the parties' extended meet and conferral process, as well as prior conferences where the Court and the parties discussed generally the topics in both motions to compel, the Court finds the parties have sufficiently complied with D. Kan. Rule 37.2.

## III.   Motion to Compel Production of Documents Subject to the Fiduciary Exception to Privilege (ECF No. 109)

After an extended period of conferral by the parties regarding document production and privilege issues, Plaintiff filed his Motion to Compel Production of Documents Subject to the Fiduciary Exception to Privilege. Plaintiff seeks to compel the production of all documents withheld by Broce and the Individual Defendants identified as privileged which Plaintiff alleges are subject to the fiduciary or *Garner*[2] exception to privilege. *Garner* requires a showing of good cause in order to permit production of otherwise privileged documents by fiduciaries defending claims of breach of fiduciary duty. At a May 26, 2021 discovery conference, the Court and parties discussed setting the current motion for oral

---

[2] *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970).

argument. Any issues to be addressed in a reply were to be addressed at oral argument. Plaintiff later filed a motion for leave to file reply (ECF No. 131). The parties used approximately 1% of their 25 pages of briefing, not including the 16 page draft reply attached to Plaintiff's motion, to address the need for a reply and the other 99% to continue to argue the substance of the *Garner* exception motion. The Court denied the motion for leave to file reply (ECF No. 135) but advised the parties they would be allowed to present arguments raised in the motion for leave briefing at oral argument on the current motion.[3]

The Court also requested copies of the draft minutes from the Broce board of directors' and stockholders' meetings at issue for *in camera* review. Having considered the briefing from the parties, including Plaintiff's and the Individual Defendants' briefing on the motion for leave, and having conducted an *in camera* review of the draft minutes and associated documents provided together with the oral arguments of counsel, the Court is prepared to rule.

**A.      Parties' Arguments**

**1.      Plaintiff's Position**

Plaintiff argues several points in support of his position:

a) the fiduciary exception to privilege applies when a stockholder brings suit against corporate directors based on behavior inimical to stockholder interests and the stockholder demonstrates good cause to overcome the privilege;

---

[3] ECF No. 135 at 5.

b) if the Kansas Supreme Court addressed the fiduciary exception, it would likely adopt *Garner* because it is consistent with the crime/tort and common-interest exceptions articulated in K.S.A. § 60-426(b);

c) good cause for the application of the fiduciary exception has been established;

d) the Individual Defendants waived any argument that the Kansas Supreme Court has not considered the fiduciary exception where they did not explicitly raise the issue in the parties' meet and conferral process; and

e) Broce and the Individual Defendants conducted themselves in bad faith and their claims of privilege should be stricken.

### 2.    Individual Defendants' Position

In their defense, the Individual Defendants argue:

a) the fiduciary exception to the attorney-client privilege has never been adopted, and likely would not be adopted, by the Kansas Supreme Court;

b) it has always been clear the Individual Defendants did not agree with Plaintiff's position on the application of the fiduciary exception;

c) good faith participation in the meet and conferral process;

d) they have not waived their argument that the fiduciary exception does not apply in a diversity jurisdiction case in federal court; and

e) the District of Kansas has refused to apply the fiduciary exception where there is no "mutuality of interest" between the parties and the Individual Defendants' interests have been adverse to Plaintiff's interest since, at least, November of 2018 when Plaintiff served a demand letter.

### 3.    Broce's Position

Nominal Defendant Broce mirrors the Individual Defendants' arguments with regard to the applicability of the *Garner* exception and Plaintiff's failure to show good cause to overcome the asserted privilege.

### B.    Analysis

### 1.    Waiver

Plaintiff argues the Individual Defendants waived their argument the Kansas Supreme Court has never adopted the *Garner* exception to privilege because it did not explicitly raise the issue during the meet and conferral process and cites to a single District of Kansas case in support of its argument.[4] In *Rowan*, Judge James found the parties met their obligations to meet and confer. But one issue plaintiff raised in its second motion to compel had been not raised previously in a discovery conference, or in its first motion to compel, was subject to waiver as to that issue.[5] But *Rowan* is distinguishable. First, the Individual Defendants raised the argument the Kansas Supreme Court has never adopted

---

[4] *Rowan v. Sunflower Electric Power Corp.,* No. 15-9227-JWL, 2016 WL 37443102, at *4 (D. Kan. July 13, 2016).
[5] *Id.*

the *Garner* exception in the briefing on the first motion before the Court on the issue. Second, golden rule correspondence in December 2020 expressly refutes application of the *Garner* exception, starting with good cause and thus does not support a finding barring the Individual Defendants from arguing the Kansas Supreme Court has never adopted the *Garner* exception to privilege.

The Court reviewed the parties' golden rule and conferral correspondence and is aware of the lengths both, the Individual Defendants and Broce, have gone to prepare a privilege log so Plaintiff could review all of Defendants claims of privilege. And, where the parties exchanged correspondence and conferred multiple times, Defendants supplemented their discovery responses, prepared a Master privilege log that would identify the documents to which the disputed *Garner* exception would potentially apply, and offered to produce certain documents to compromise the discovery disputes, the Court does not find support for a finding barring the Individual Defendants from arguing the Kansas Supreme Court has never adopted the *Garner* exception to privilege. As such, the Court will not find a waiver.

## 2.    Application of the Fiduciary Exception

### a.    The genesis of the fiduciary exception

The *Garner* or fiduciary exception to the attorney-client privilege arose in *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970). *Garner* was a federal question case alleging violations of the Securities Exchange Act, SEC Rule 10(b)(5) and other federal statutes

with pendant Alabama securities and common law fraud claims.[6] The complaint also included a shareholder derivative action on behalf of a corporation where the plaintiffs claimed the corporation itself was damaged by fraud in the purchase and sale of certain securities.[7] The *Garner* court noted federal question cases are "predicated on federal law, embodying federal policies" and enforcement of those policies "demands that the federal courts apply their own rules of procedure where substantial state interests are not infringed."[8]

> The Fifth Circuit found:
>
> The attorney-client privilege still has viability for the corporate client. The corporation is not barred from asserting it merely because those demanding information enjoy the status of stockholders. But where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance.[9]

Factors for determining whether stockholders had shown good cause why the attorney-client privilege should not be invoked in a particular case include:

> [T]he number of shareholders and the percentage of stock they represent; the bona fides of the shareholders; the nature of the shareholders' claim and whether it is obviously colorable; the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; whether, if the shareholders' claim is of wrongful action by the

---

[6] *Garner* at 1095 & 1098.
[7] *Id.* at 1095.
[8] *Id.* at 1098.
[9] *Id.* at 1103-04.

corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality; whether the communication related to past or to prospective actions; whether the communication is of advice concerning the litigation itself; the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons.[10]

### b.      Is the fiduciary exception applicable in this case

Here, jurisdiction is not based upon a federal question but is based on the diversity of the parties. In diversity actions state law governs attorney-client privilege.[11] In *Herrmann v. Rain Link, Inc.*[12] the plaintiff brought claims under the Americans with Disabilities Act, the Kansas Act Against Discrimination, the Kansas Wage Payment Act, and a state law claim for breach of fiduciary duty.[13] It was thus, a federal question case with pendant state law claims. Judge Sebelius looked at both federal and Kansas law and found "neither the Tenth Circuit nor the Kansas Supreme Court has addressed the fiduciary exception and the manner in which courts should apply it."[14] Judge Melgren found the same to be true in *Luper v. Bd. of Trs. of the Police & Fire Ret. Sys. of Wichita Kan.*[15] and the undersigned finds the same to be true today.

---

[10] *Id.* at 1104.

[11] Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); *see also Kannaday v. Ball*, 292 F.R.D. 640, 646 (D. Kan. 2013) ("state law governs the applicability and scope of attorney-client privilege in diversity actions").

[12] *Herrmann v. Rain Link, Inc.*, No. 1123-RDR, 2012 WL 1207232, at *4 (D. Kan. April 11, 2012).

[13] *Id.* at *1.

[14] *Id.*  at *6.

[15] *Luper v. Bd. of Trs. of the Police & Fire Ret. Sys. of Wichita Kan.*, No. 15-1399-EFM, 2018 WL 1899159, at *2 (D. Kan. April 19, 2018).

In *Herrmann*, like here, the plaintiff argued a majority of the documents on the privilege log defined as attorney-client privilege or attorney work product were none the less discoverable because of the fiduciary exception.[16] Judge Sebelius considered *Garner*, but noted "[n]evertheless, courts have generally found the fiduciary exception inapplicable to communications made during a time when the parties' interest were not aligned…."[17] Where the majority of the documents at issue there were after a time when the parties interests were no longer aligned, and where neither the Tenth Circuit nor the Kansas Supreme Court addressed the fiduciary exception, and the manner it should be applied, it was determined the fiduciary exception would not apply to the documents at issue in the case.[18]

> Judge Sebelius further considered the rationale behind the fiduciary exception.
>
> Courts have applied *Garner's* fiduciary exception in a variety of cases in which the party from whom discovery is sought owed a fiduciary duty to the party seeking discovery-including actions brought by minority shareholders. These opinions have articulated two reasons for applying the exception. The first is that the fiduciary is not the sole client of the attorney but is merely a proxy for the beneficiary. In other words, the so-called "fiduciary exception" is not really an exception at all but is a logical extension of the client's control of the attorney-client privilege. In *Garner*, the Fifth Circuit certainly considered this rationale. It found the common-interest doctrine instructive. That is, when an attorney represents "parties having a common interest, neither party may exercise the attorney-client privilege in a subsequent controversy with the other."
>
> . . .
>
> **Conversely, when there is no mutuality of interest between the fiduciary and beneficiary, the reasons for applying the fiduciary exception fade.**

---

[16] *Herrmann* at *6.
[17] *Id.*
[18] *Id.*

> **For example, a number of courts have noted the fiduciary exception does
> not apply when fiduciaries seek legal advice for their own protection
> against beneficiaries** or when fiduciaries seek legal advice about non-
> fiduciary matters. When fiduciaries seek legal advice in this capacity, their
> interests are not aligned with the beneficiaries' interests; so, it would make
> little sense to consider the beneficiaries the true clients of the attorney and
> therefore entitled to disclosure.[19]

The Court finds the rationale in *Herrmann* persuasive.

Upon review of the affidavit of counsel for the Individual Defendants,[20] exhibits in

opposition to the instant motion,[21] exhibits to the Broce and the Individual Defendants'

Response to Plaintiff's Motion to Disqualify Counsel referenced in the Individual

Defendants' briefing here,[22] together with the arguments of counsel, from a factual

standpoint the Court determines Broce and the Individual Defendants were aware of

Plaintiff's anger regarding certain management issues; were aware Broce needed to address

those issues, including the alleged Waldon/Broce conflict of interest; and anticipated a

lawsuit would be filed at least as early as the August 21, 2018 Broce board meeting.

In September and October 2018, the Broce Board of Directors held no less than 4

special meetings to address the compensation of Broce directors and shareholders and the

relationship between Waldon and Broce. Despite the actions of the Broce board, Plaintiff

sent the Individual Defendants a demand letter on November 6, 2018 alleging the directors

breached their fiduciary duties on several fronts including their compensation from Broce,

the Broce/Waldon relationship regarding the BW260, and Alan's conflict of interest

---

[19] *Id.* at *7 (collecting cases) (emphasis added).
[20] ECF No. 71-1.
[21] ECF No. 129-2.
[22] ECF No. 71-2 and ECF No.71-4.

between Waldon and Broce. Those are all claims that Broce was trying to address in September and October of 2018 and are part of his claims in this case. Broce and the Individual Defendants hired the Foulston firm shortly after the Individual Defendants received the demand, and their counsel sent a response to Plaintiff's demand.

The Court has reviewed the two, out of District ERISA cases[23] Plaintiff cites urging the Court to consider whether Broce and the Individual Defendants were engaging in a "fiduciary act" when the board approved the Waldon purchase by Broce and consider whether the documents at issue related to such a fiduciary act. The relationship between Waldon and Broce and any conflict of interest of Alan regarding Broce's purchase of Waldon have been the object of Plaintiff's ire since August of 2018, which the board tried to repair in September and October of 2018. Plaintiff sent a demand including those issues on November 6, 2018, and later filed suit on the same claims. Where Broce and the Individual Defendants received the demand letter and hired counsel to represent them against Plaintiff's claims, the Court finds no mutuality of interest between the fiduciary – Broce and the Individual Defendants and the beneficiary – Plaintiff as of the November 6, 2018 demand letter, even though the sale of Waldon to Broce was completed after that date.

The Court has reviewed the privilege log and only a handful of the documents indicate they occurred before November 6, 2018. For these reasons, the Court finds under

---

[23] *Moore v. Metropolitan Life Ins. Co.*, 799 F.Supp.2d 1290, 1297 (M.D. Ala. 2011) and *Carr v. Anheuser-Busch Companies, Inc.*, 791 F.Supp.2d 672, 675 (E.D. Mo. 2011).

the circumstances in this case, Plaintiff has not carried his burden to show the fiduciary exception applies to attorney-client privileged or work product protected documents.

### c.      Other arguments regarding production

Rather than discuss individual entries on Broce and Individual Defendants' 108 page, nearly 2,400 entry privilege log, the parties agreed to place the logged documents into four categories of documents for discussion: 1) materials concerning the Broce and Waldon relationship and Broce's acquisition of Waldon's assets and liabilities; 2) BKD's valuation of Waldon and Broce; 3) discussion of board and shareholder meetings and minutes; and 4) discussions regarding share allocations. Broce and the Individual Defendants made certain offers or concessions regarding production of certain documents within those categories in their meet and confer process. The Court is sensitive to the difficulty Plaintiff has had in discovering information in support of his derivative claims.

The Court **orders** Broce and the Individual Defendants to produce those documents they offered to produce in compromise of the discovery issues in this case. In addition to the fiduciary exception, the parties raised other arguments regarding the production of documents in three of these categories. The Court addresses the production of the documents offered in compromise and the additional arguments related to the categories of documents below.

### i.      Materials concerning the Broce and Waldon relationship and Broce's acquisition of Waldon's assets and liabilities

The Individual Defendants offered to produce drafts of the underlying financial transaction documents but continue to maintain privilege on the underlying attorney-client correspondence. The Court **orders** the Individual Defendants to produce those drafts of the underlying financial transaction documents **no later than December 10, 2021**.

## ii.   BKD's valuation of Waldon and Broce

Before suit, Broce engaged BKD, LLP ("BKD") to provide valuations of Waldon and Broce related to the acquisition of Waldon. After suit was filed, the Foulston firm, then counsel for all Defendants and now counsel for the Individual Defendants retained BKD to provide "dispute consulting services" related to the litigation. Plaintiff served its first discovery requests on all Defendants seeking "all documents, including but not limited to communications provided to or received from BKD, LLP regarding the valuation of a 100% Member Interest in Waldon as of November 18, 2019…."[24] Plaintiff also served a subpoena on BKD seeking 6 categories of documents related to the valuation. In Plaintiff's motion, he asks the Court to compel production of "**all documents concerning Broce's retention of BKD's services**, BKD's valuation of Broce and Waldon, any advice or analysis provided by BKD related to the potential acquisition of Waldon…."[25] Plaintiff may not have been aware that Foulston had also engaged BKD as a consultant in this litigation, but the language in the briefing opens up the scope of the documents beyond that of what was sought in the request for production. Plaintiff has not made a showing of the

---

[24] See Plaintiff's First Set of Discovery Requests to the Broce Defendants, ECF No. 112-2, at 14.
[25] ECF No. 110 at 18 (emphasis added).

exceptional circumstances required under Fed. R. Civ. P. 26(b)(4)(D)(ii) to warrant the production of documents related to BKD's work for Foulston as an expert employed for trial preparation.

Turning to the documents related to BKD's valuation work for Broce. Defendants did not object to the subpoena and BKD produced responsive documents. In their meet and conferral discussions, the Individual Defendants offered to identify and produce the correspondence on the privilege log that was responsive to categories 1-6 in the subpoena to BKD, to supplement the privilege log to identify those communications with BKD that were related to its work as an expert in this case, and to withdraw the assertion of privilege for correspondence between representatives of Waldon and BKD and then produce those documents. The Court **orders** the Defendants to supplement its privilege log and to produce the offered documents **no later than December 10, 2021**.

### iii.    Discussion of board and shareholder meetings and minutes

Plaintiff argues he is entitled to draft minutes from Broce's board and shareholder meetings because; 1) they were not drafted by an attorney for the purpose of giving legal advice; 2) and they are not work product created for this litigation. To contest production, the Individual Defendants argue work product doctrine and attorney-client privileged where they sought advice from their counsel. The Court requested copies of the board and shareholder minutes at issue for *in camera* review.

As previously stated, where jurisdiction in this case is based on the diversity of the parties, state law governs attorney-client privilege.[26] The attorney-client privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor."[27]  The Court **finds** only the communications between counsel and the Individual Defendants to be confidential communications between attorney and client,  and are thus protected.

However, after review of the draft minutes themselves, the Court **finds** they are neither protected by the attorney-client privilege nor work product doctrine. Unlike *Great Plains Mut. Inc. Co., Inc. v. Mut. Reinsurance Bureau*[28] cited by the Individual Defendants, where the court found plaintiff's attorney was acting in his capacity as an attorney during the board meetings and the advice given required the skill and expertise of an attorney. Here, it does not appear that the purpose of the conversations during the board meetings were to render legal advice. The Court finds many of the redline changes to the draft minutes are to correct minor issues such as sentence structure, who was present at the meetings, or they suggest alternate wording, none of which require counsel's skill and expertise as an attorney.

---

[26] Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); *see also Kannaday v. Ball*, 292 F.R.D. 640, 646 (D. Kan. 2013) ("state law governs the applicability and scope of attorney-client privilege in diversity actions").

[27] *Marten v. Yellow Freight Sys., Inc.*, No. 96-2013-GTV, 1998 WL 13244, at *6 (D. Kan. Jan. 6, 1998). *See also* K.S.A. § 60-426.

[28] 150 F.R.D. 193, 197 (D. Kan. 1993).

Fed. R. Civ. P. 26(b)(3) provides "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." To establish work-product protection, a party must show "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party."[29] Even though the draft minutes were created after a time when litigation was likely anticipated, the Court finds the information in the minutes was not prepared in anticipation of litigation or for trial. They were prepared to document the business decisions of the corporation at its board and shareholder meetings. Therefore, the Court **orders** the production of the documents provided for *in camera* review as noted in the table attached at the end of the opinion **no later than December 10, 2021**. The draft minutes and attachments are to be produced with minimal redactions to protect limited information the Court found to be protected by the attorney-client privilege.

### iv.     Discussions regarding share allocations

Plaintiff alleges the communications between counsel and Defendants regarding the share allocations are not privileged, but argues even if they are privileged, they are discoverable under the fiduciary exception. Based on the examples of communications from the privilege log provided in Plaintiff's briefing, the Court is not persuaded these

---

[29] *Kannaday* at 648.

discussions are discoverable. It is noted, there are communications on the privilege log between an Oklahoma attorney who worked on Broce Family Trust issues, including the allocation of Broce shares to the Vance siblings and their spouses. Because the meet and conferral discussions resulted in the Defendants offering to produce those communications and related documents, the Court **orders** the Defendants to produce those communications and related documents **no later than December 10, 2021**.

Having resolved the issues related to the *Garner* exception, the Court will now turn to Plaintiff's argument that the native files are discoverable.

## IV.     Motion to Compel Production of Native Files (ECF No. 111)

Plaintiff served its First Set of Discovery Requests on December 23, 2019. The requests for production sought certain financial statements and information. Broce and the Individual Defendants responded and produced financial reports as PDFs. Plaintiff sought to have the financial data produced in native format to allow his expert to filter and segregate the information for analysis without having to create native documents and key in the information from the static PDFs. Being unable to reach a resolution during their meet and conferral process, Plaintiff filed the instant motion. Having reviewed the briefing from Plaintiff and Broce and, after consideration of arguments of counsel, the Court is prepared to rule.

A.      **Parties' Arguments**

1.      **Plaintiff's Position**

After Plaintiff propounded his First Set of Discovery Requests specifically RFP No. 11 and 14 to the Broce Defendants on December 23, 2019, Broce and the Individual Defendants responded collectively and produced requested financial information, some in PDF format and some in Excel format. Plaintiff wrote to Broce and the Individual Defendants to request that financial information be produced in native format to allow the data to be aggregated, filtered, and segregated for analysis. Upon learning during the meet and conferral process that the financial reports were generated by QuickBooks, Plaintiff sought a clone or export of the entire QuickBooks database.

Plaintiff argues:

a)      the information sought is non-privileged, relevant to Plaintiff's claims, and proportional to the needs of the case;

b)      the information sought is in Broce's possession, custody, or control;

c)      producing the information in native format imposes no undue burden on Broce; and

d)      where Plaintiff has requested the information be produced as it is maintained in the ordinary course of business, Broce must produce the responsive documents in native format "with its metadata intact."

### 2.    Broce's Position

Broce argues:

a)    Plaintiff did not request "native files" in his First Set of Discovery Requests to the Broce Defendants and Broce is not obligated under Fed. R. Civ. P. 34 to reproduce to documents where they were originally produced in a reasonably usable form;

b)    Plaintiff has only articulated a generalized need for the native files without setting forth with specificity what tasks it cannot accomplish with the information as produced;

c)    production of the information in native format with its metadata is not proportional to the needs of the case; and

d)    Plaintiff is not entitled to a clone or export of Broce's entire QuickBooks system which includes other financial data that is not the subject of this litigation.

### B.    Analysis

Fed. R. Civ. P. 26(b)(1) addresses the scope of discovery regarding document production. It provides "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case..." And Fed. R. Civ. P. 26(b)(2)(B) addresses specific limitations on ESI saying, "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to

compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost."

Fed. R. Civ. P. 34(b) addresses the procedure for requesting documents within the scope of Rule 26(b).

The request:

**(A) must describe** with reasonable particularity each item or category of items to be inspected;

 **(B) must specify** a reasonable time, place, and manner for the inspection and for performing the related acts; and

 **(C) may specify** the form or forms in which electronically stored information is to be produced.[30]

Fed. R. Civ. P. 34(b) also addresses the production of documents or electronically stored information ("ESI").

**(E)** *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

 **(i)** A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

 **(ii)** If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

 **(iii)** A party need not produce the same electronically stored information in more than one form.[31]

---

[30] Fed. R. Civ. P. 34(b)(1)(A)-(C) (emphasis added).
[31] Fed. R. Civ. P. 34(b)(2)(E)(i)-(iii).

Fed. R. Civ. P. 34(b) does not require a requesting party to specify the form in which ESI is to be produce.[32] When the form of the ESI is not requested, the producing party must either produce the ESI in the form or forms in which it is ordinarily maintained or in a reasonably usable form.[33]

Broce produced the documents at issue in PDF and Excel formats, both reasonably usable forms. And while Fed. R. Civ. P. 34(b)(2)(E)(iii) does not require a party produce the same ESI in more than one form, the parties anticipated the production of ESI in multiple forms when they had their initial Rule 26(f) conference. The parties' ESI protocol from their planning report, which was included in the Court's Scheduling Order[34] says:

> Documents responsive to a discovery request and/or documents produced in connection with mandatory disclosures may initially be produced in .PDF format, except for JPEG file types and/or excel spreadsheets, which shall be produced in native format. If, upon receipt of a .PDF document, a party requests the production of such document in native or other format, the party will present such request to the producing party, and the parties will confer in good faith in attempt to agree upon the request.

Additionally, even if Plaintiff did not explicitly request the form of the ESI in RFP Nos. 11 and 14, it should come as no surprise to Broce that certain documents would be requested in native format where Plaintiff's definition of "Document" in his discovery requests included "any data stored electronically and capable of being retrieved by a computer or word processor or any other software program and printed or transmitted therefrom," explicitly includes ESI as defined separately, and the definition of ESI

---

[32] Fed. R. Civ. P. 34(b)(1)(C).
[33] Fed. R. Civ. P. 34(b)(2)(E)(ii).
[34] ECF No. 25.

specifically references "accounting application data (e.g. Quickbooks and Sage data files)."[35] Where the parties anticipated the production of documents in multiple formats and Plaintiff needs the information in native format to allow the data to be aggregated, filtered, and segregated for analysis, the Court finds Broce's argument it is not obligated under Fed. R. Civ. P. 34 to reproduce to documents where they were originally produced in a reasonably usable form unpersuasive.

Broce raises, without much support, the argument that production of the information in native format, with its metadata, is not proportional to the needs of the case. This argument overlaps significantly with its argument that it is not obligated under Fed. R. Civ. P. 34 to reproduce to documents where they were originally produced in a reasonably usable form discussed above. The Court disagrees. This District has found that metadata is generally discoverable when relevant and proportional to the needs of the case.[36] Plaintiff identifies RFP Nos. 11 and 14, as those seeking the financial information now requested to be produced in native format. Broce does not object to either request based on relevance.[37] Even if Broce had objected, the Court would find the metadata relevant. Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could bear on any issue" that is or may be in a case.[38] Where financial information is often produced

---

[35] See Definitions and Instructions No. 23, ECF No. 112-2 at 5-6.

[36] *Holick v. Burkhart,* No. 16-1188-JTM, 2018 WL 372440, at *4 (D. Kan. Jan. 11, 2018). See *Helget v. City of Hays, Kansas*, 300 F.R.D. 496, 503 (D. Kan. 2014) and *Williams v. Sprint/United Management Co.*, 230 F.R.D. 640, 652-53 (D. Kan. 2005).

[37] See Responses to Request for Production Nos. 11 and 14, ECF No. 112-3 at 19-20.

[38] *Lawson v. Spirit Aerosystems, Inc.*, No. 18-1100-EFM, 2020 WL 243598, at *4 (D. Kan. Jan. 16, 2020) (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 US. 340, 351 (1978). See also *In re Syngenta AG MIR 162 Corn Litig.*, MDL No. 2591, No. 15-9900-JWL, 2019 WL 5622318, at *2 & n. 7 (D. Kan. Oct. 31, 2019).

in spreadsheet format and the spreadsheet metadata frequently includes the formulas used to produce a value shown in the spreadsheet, the Court finds the metadata in the native files relevant.

To determine whether production of information, here the financial information in native format with its metadata intact, is proportional to the needs of the case, a court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[39] The Court will look at proportionality together with the issue of whether the requests are broad enough in scope for Broce to produce a clone of its QuickBooks system in native format.

Taken separately, RFP No. 11 seeks the production of "all financial statements and other materials, including but not limited to bank statements, budgets, forecasts, projections, balance sheets, income statements, cash flow statements, statements of shareholders' equity, and profit and loss statements for Broce for the years 2012 to present."

RFP No. 14 seeks "copies of any and all documents reflecting the sales of BB350s, BB250s, BW260s and Turf Bosses from 2012 to present."[40] The Court does not read these two requests as broad enough to seek the production of a clone of Broce's entire accounting system. The entire accounting system likely contains information that is not relevant to

---

[39] Fed. R. Civ. P. 26(b)(1).
[40] See Request for Production Nos. 11 & 14 at ECF No. 112-2 at 13.

these requests or even this litigation, (e.g., company payroll information or the sale of other Broce products).

Broce identified by Bates number the documents, approximately 45 pages, it produced as responsive to RFP Nos. 11 and 14.[41] Where Plaintiff does not have access to Broce's accounting system, considering the amount in controversy, and the limited burden of rerunning reports and reproducing the equivalent of 45 pages of documents in native format, the Court finds the production of the financial information previously produced in native format proportional to the needs of the case. The Court **orders** Broce to produce those documents in native format, with metadata intact, **no later than December 10, 2021**.

## V.     Conclusion

Based on the foregoing and considering the Court's *in camera* review of the documents presented, such documents shall be exchanged in accordance with the Court's rulings as noted above.

**THEREFORE**, the Court **GRANTS in part and DENIES in part** Plaintiff's Motion to Compel Production of Documents Subject to the Fiduciary Exception to Privilege and **GRANTS in part and DENIES in part** Plaintiff's Motion to Compel Production of Native Files for the reasons set forth above.

---

[41] See Defendants' Responses to Request for Production Nos. 11 & 14 at ECF No. 112-3 at 19-20.

**IT IS SO ORDERED**.

Dated November 29, 2021.


s/ Gwynne E. Birzer
GWYNNE E. BIRZER
U.S. Magistrate Judge

| Bates Number(s) | Documents | Court Determination | Redaction |
|---|---|---|---|
| 00001 | Email communication between counsel and Individual Defendants | This document is not discoverable. | |
| 00002-42 | Estate tax documents and Trustee Deeds | These documents shall be produced with redaction. | All social security numbers, EINs, and bank account numbers shall be redacted. |
| 00043 | December 18, 2018 Board minutes | This document shall be produced with redaction. | The sixth paragraph, last sentence, shall be redacted after "2019" through the end of the sentence. |
| 00044 | Email communications between counsel and Individual Defendants | This document is not discoverable. | |
| 00045-46 | December 18, 2018 Board minutes | These documents shall be produced with redaction. | The sixth paragraph, last sentence, shall be redacted after "BW260" through the end of the sentence. |
| 00047 | Workshare comparison | This document shall be produced. | Not applicable. |
| 00048 | Email communication between counsel and Individual Defendants | This document is not discoverable. | |
| 00049-52 | October 23, 2018, November 20, 2018 & December 19, 2018 Board minutes | These documents shall be produced. | Not applicable. |
| 00053-54 | December 19, 2018 Board minutes | This document shall be produced with redaction. | On the first page, the last line of the eighth paragraph shall be redacted in its entirety. |
| 00055 | Email communications between counsel and Individual Defendants | This document is not discoverable. | |
| 00056-57 | December 19, 2018 Board minutes | This document shall be produced with redaction. | On the first page, the last line of the eighth paragraph shall be redacted in its entirety. |
| 00058-59 | December 19, 2018 Board minutes | This document shall be produced with redaction. | On the first page, the last line of the eighth paragraph shall be redacted in its entirety. |
| 00060 | Workshare comparison | This document shall be produced. | Not applicable. |
| 00061-62 | October 23, 2018 Board minutes | This document shall be produced. | Not applicable. |
| 00063-68 | October 23, 2018 Board minutes with Workshare comparisons | These documents shall be produced. | Not applicable. |
| 00069-73 | November 20, 2018 Board minutes with Workshare comparisons | These documents shall be produced. | Not applicable. |

| 00074 | Email communications between counsel and Individual Defendants | This document is not discoverable. | |
|---|---|---|---|
| 00075-76 | March 11, 2019 Board minutes | This document shall be produced with redaction. | On the first page, the third line of the sixth paragraph shall be redacted after "BW260" through the end of fourth line. |
| 00077-78 | Email communications between counsel and Individual Defendants | This document is not discoverable. | |
| 00079-82 | March 26, 2019 Annual Meeting of the Stockholders minutes | This document shall be produced. | Not applicable. |
| 00083-84 | Email communications between counsel and Individual Defendants | This document is not discoverable. | |
| 00085-93 | March 26, 2019 Annual Meeting of the Stockholders minutes with Workshare comparisons | These documents shall be produced. | Not applicable. |
| 00094 | Email communications between counsel and Individual Defendants | These documents are not discoverable. | |
| 00095-96 | May 17, 2019 Board minutes | This document shall be produced with redaction. | On the first page, the fourth line of the sixth paragraph shall be redacted after "BW260" through the end of fifth line. |
| 00097-99 | Email communications between counsel and Individual Defendants | This document is not discoverable. | |
| 00100-103 | March 26, 2019 Annual Meeting of the Stockholders minutes | This document shall be produced. | Not applicable. |
| 00104 | Email communications between counsel and Individual Defendants | This document is not discoverable. | |
| 00105-106 | June 6, 2019 Board minutes | This document shall be produced. | Not applicable. |
| 00107 | Email communication between counsel and Individual Defendants | This document is not discoverable. | |
| 00108-109 | June 6, 2019 Board minutes | This document shall be produced. | Not applicable. |
| 00110 | Email communication between counsel and Individual Defendants | This document is not discoverable. | |
| 00111 | Email communication between counsel and Individual Defendants | This document is not discoverable. | |

| 00112-120 | December 3, 2019 Special Meeting board minutes with attachments | These documents shall be produced. | Not applicable. |
|---|---|---|---|
| 00121 | Email communication between counsel and Individual Defendants | This document is not discoverable. | |
| 00122-129 | December 3, 2019 Special Meeting board minutes with attachments | Th documents shall be produced. | Not applicable. |
| 00130 | Email communication between counsel and Individual Defendants | This document is not discoverable. | |
| 00131-134 | January 10, 2020 Board minutes | These documents are discoverable. | Not applicable. |
| 00135 | Email communication between counsel and Individual Defendants | This document is not discoverable. | |
| 00136-00139 | February 11, 2020 Annual Meeting of the Stockholders minutes | This document shall be produced. | Not applicable. |